Chicago & E. I. R. R. Co. v. Finnan.

## Chicago and E. I. R. R. Co. v. Ada Finnan, Adm'x.

1. MASTER AND SERVANT—*Duty of Master to Provide Reasonably Safe Appliances.*—It is the duty of the master to provide suitable and safe, or ordinarily safe, machinery and appliances which, with reasonable care, can be used with reasonable safety.

2. SAME—*Master Not Required to Furnish the Safest or the Best Appliances.*—The master's duty is not to furnish the safest or the best appliances. but his obligation is met by the maintenance of such as are reasonably safe for the purposes intended.

3. INSTRUCTIONS—*Assuming that Appliances Furnished by the Master are Dangerous per se is Erroneous.*—An instruction which proceeds upon the assumption that an appliance furnished by the master is dangerous *per se*, and that in its use the master is negligent, because there are other appliances not dangerous which he might use, is erroneous.

4. BILL OF EXCEPTIONS—*Must Contain all Matter Objected to Below.*—All remarks and exceptions thereto should be made a part of the bill of exceptions by the trial judge, in order to raise any question in this court concerning them. It is wholly ineffective to place them in the record by incorporating them with the motion for a new trial.

5. PRESUMPTIONS—*As to Intention of Jurors.*—Where the verdict of the jury is expressed in ambiguous or doubtful language, two different amounts being given as damages, the presumption is that the lesser amount was the one intended as between the two.

**Trespass on the Case,** for personal injuries. Trial in the Circuit Court of Vermilion County; the Hon FERDINAND BOOKWALTER, Judge, presiding. Verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1899. Reversed and remanded. Opinion filed September 20, 1899.

H. M. STEELY, attorney for appellant; W. H. LYFORD, of counsel.

The law imposes upon the employer only the obligation to use reasonable and ordinary care and diligence in providing suitable and safe machinery. The machinery is not required to be the best or most approved kind, or to be absolutely safe, and he is not required to discard the machinery or appliances in use and adopt or apply every new invention. It is sufficient if the machinery be of an ordinary character, or such as can, with reasonable care, be used with reasonable safety. C., R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 49; Camp Point Mfg. Co. v. Ballou, 71 Ill. 418; Simmons v. C. & T. R. R. Co., 110 Ill. 340; L. S. & M. S. R. R. Co. v. McCormick, 74 Ind. 445; Payne v. Reese, 100 Pa. St. 306; McGinnis v. C. S. C. Co., 49 Mich. 466; Smith v. St. L., K. C. & N. Ry. Co., 69 Mo. 32; Elliott on Railroads, Vol. 3, Sec. 1274; Bailey on Personal Injuries, Vol. 1, Secs. 56 and 57; Hickey v. Taafe, 105 N. Y. 26; Stringham v. Hilton, 111 N. Y. 188; P. & C. R. R. Co. v. Sentmeyer, 92 Pa. St. 276; Lehigh Coal Co. v. Hayes, 128 Pa. St. 303; Shearman & Redfield on Negligence, 5th Ed., Vol. 1, Sec. 195; Wood's Master and Servant, Sec. 332, p. 692; Whitwam v. W. & M. R. R. Co., 58 Wis. 408; Sisco v. L. & H. R. R. Co., 145 N. Y. 296; Carter v. O. O. Co., 34 S. C. 211; Wormell v. M. C. R. R. Co., 79 Me. 397; Randall v. B. & O. R. R. Co., 109 U. S. 478.

An employer is not bound to abandon the use of machinery or appliances merely because newer and better ones have come into use. If the appliances are in common use,

and in good repair, the employer is not to be deemed negligent because he does not cast them aside and procure newer ones, and there being no negligence, there can be no actual wrong because the appliances are not replaced by better and safer ones, although it is within the power of the employer to procure them. Homertake, etc., Co. v. Fullerton, 69 Fed. Rep. 923; Marsh v. Chickering, 101 N. Y. 396; Hodgkins v. Eastern R. R. Co., 119 Mass. 419; S. P. R. R. Co. v. Seley, 152 U. S. 145; Gilbert v. Guild, 144 Mass. 601; Sheets v. C. & I. C. Ry. Co., 139 Ind. 682; L. S. & M. S. R. R. Co. v. McCormick, 74 Ind. 440; Huhn v. M. P. R. R. Co., 92 Mo. 440.

An employer may choose the kind of machinery or appliances he desires to use, be it old or new, and if the machinery is sound, well made and kept in repair, he will not be liable for an accident occurring to an employe when the ground alleged is that there is a better and safer kind used for the same purpose, and it is error to submit to a jury the question or determination in a given case of what kind of machinery or appliances an employer should use in his business. Richards v. Rough, 33 Mich. 212; Titus v. B., etc., R. R. Co., 136 Pa. St. 618; Kehler v. Schwenk, 144 Pa. St. 348; M. C. R. R. Co. v. Smithson, 45 Mich. 212; Sweeney v. B. & J. E. Co., 101 N. Y. 520.

MABIN & CLARK, attorneys for appellee.

" That the master, although not held to guarantee the absolute perfection and suitableness of the machinery and appliances furnished the servant, is nevertheless bound to provide that which is safe and suitable for carrying on the business in which the servant is engaged, and is held to the employment of every precaution which a reasonably prudent man would exercise under like circumstances, is well established." Pullman Pal. Car Co. v. Lack, 143 Ill. 255; Penn. Co. v. Lynch, 90 Ill. 333; Fairbanks v. Haentzsche, 73 Ill. 236; Mo. Furnace Co. v. Abend, 107 Ill. 44.

" The master must exercise reasonable and proper care to provide, and keep in suitable repair and condition, safe and suitable machinery and appliances, and if a servant is injured in consequence of a neglect of such duty, or negligent dis-

charge of it, he being in the exercise of ordinary care for his own safety, the master is liable." Pullman Pal. Car Co. v. Lack, 143 Ill. 256; Calumet Steel and Iron Co. v. Martin, 115 Ill. 358.

"While it is the duty of the servant to take notice of defects that are patent, they are not required to make examinations for defects, and they may properly act on the presumption that the master has used reasonable care in placing the machinery with which they are to work in a reasonably safe condition." Hines Lumber Co. v. Ligas, 172 Ill. 315.

"The law is well settled that it is the duty of the master to use reasonable care to furnish his servants a reasonably safe place in which to perform his work, that this is a positive obligation resting upon the master, and he is liable for the negligent performance of that duty whether he undertakes its performance personally or through another servant." Leonard v. Kinnare, 174 Ill. 537; C. & A. R. R. v. Scanlan, 170 Ill. 106; Hess v. Rosenthal, 160 Ill. 621.

Mr. Presiding Justice Wright delivered the opinion of the court.

John E. Finnan, intestate, was in the employ of appellant as switchman, in which occupation he had been engaged for several years on different railroads. The night of December 19, 1898, was wet and foggy and all the appliances in his use were covered with the moisture, and slippery; and while making up a freight train in the yards at Danville with the rest of the switching crew, at about nine o'clock that night, it devolved upon Finnan to make a coupling between two loaded coal cars of the train; the car on the south being at the north end of a stationary cut of cars the brakes of which were set, and the other being the last of two cuts which had been coupled, were being moved down to allow Finnan to make connection. The coupling appliance in use on both cars was the ordinary link and pin, in which the link is passed at each end through grooves in the heads of the drawbars and fastened by the pins. These cars were to be coupled on a curve of the track of which the radius was about 2,456 feet and on which the corners of the cars on the inside, or concave of the curve, were some three or four inches nearer than the corners on the outside.

Links were in both drawbars, and Finnan being informed of that fact, as the car moved down, he removed the link from and cocked the pin in the moving car, as he came with it, preparatory to inserting the link still remaining in the stationary car. When the cars were driven together, which was done with considerable force, the drawbars passed each other at the side; the coupling was not made, and Finnan was caught between the ends of the cars near the corners on the inside of the curve and was killed.

The heads of these drawbars measured seven inches across from side to side on the faces. These seem to be the undisputed facts in the case, other evidence being involved in grave conflict.

The declaration, consisting of four counts, charges appellee with having carelessly and negligently furnished the cars in a dangerous and unsafe condition with worn draft timbers, needing repair, which permitted too much side play to the drawbars, so that in making a coupling when the drawbars came together they would slip past each other; that appellee failed to have the cars properly inspected by a competent inspector and thereby furnished the cars in dangerous and unsafe condition, with worn draft timbers and chin straps out of repair, whereby too much side play of the drawbars was allowed; that the couplings, drawbars and connections of the cars were improperly constructed with heads of drawbars too small, and couplings so arranged that Finnan was required to step too far in between the cars, which therein were unsafe, whereby he was caught between the cars when the drawbars slipped in consequence of such faulty construction; that instead of striking together as intended, the draft timbers, drawbars and connections were so worn and out of repair, and permitted so much side play of the drawbars, that when the cars came together the drawbars in consequence slipped past each other, resulting in the death of Finnan, while he was in the exercise of ordinary care for his own safety. Trial by jury resulting in a verdict against appellant, upon which the court rendered judgment for $2,666.66, it appeals to this court and urges various errors as ground of reversal.

The first action of the court urged as error by counsel for which this judgment should be reversed is that the court admitted improper evidence as to there being a later invention and a better coupling appliance than the link and pin coupling, with which the railroad should have equipped its cars. In this regard several witnesses for appellee, and of appellant on cross-examination, over the objection of appellant, were allowed to testify substantially that the link and pin coupling has been practically dropped from use on railroad cars because it is more dangerous, or by the risks in its use more apt to be dangerous, to operatives than a new device now coming into use; that any danger or risk to operatives on account of the links and pin coupling could be avoided by the use of this new coupling device; that on account of the risks and dangers in its use the link and pin coupling has been condemned. As an instance of this testimony, the witness August Faulstich, for appellee, was asked:

" Q.   State whether or not this devise has been discontinued in its manufacture and use, and if so, for what reason ? A.   .It has been dropped to a certain extent for something better got up.   Just using this so long as they didn't have the other put in; the other was the automatic coupler, where a man didn't have to go between the cars to make the coupling.

Q.   You may state whether this device is reasonably safe ? A.   No, it ain't safe; not reasonably safe.

Q.   Now, for what reason ? A.   A man has to go between there and take hold of the link and make the coupling, and if anything is the least bit wrong about the bar, it is apt to catch them, and on that account I say it is not safe.

Q.   You may state how that could have been avoided, if that was not reasonably safe ? A.   It could have been avoided by having the different coupler in it.   By having an automatic coupler, that comes up, and the cars hit and come together in that shape and couples itself, and the man does not have to go between the cars at all."

And the cross-examination of appellant's witness, Albert Anders, as follows :

" Q.   Now, you know this coupler has been condemned, don't you ? A.   Yes, sir."

All of which was objected to by appellant; and objections overruled.

The theory upon which this evidence was doubtless admitted is that if there existed a coupler of a different pattern, which in use was relatively safer than the ordinary style, such as was used on the cars in question, or absolutely safe, then it was appellant's duty to furnish that appliance; and it would be evidence of negligence on its part if it failed to provide such coupling; for a comparison in the evidence of the two devices could produce no distinction as to the one complained of alone, except that which would be expressed in relative terms, as if to say the Janney coupler is safer than the link and pin; and so if that evidence be considered as relevant to the issues in the case no distinct conclusion could ever be reached as to whether the link and pin is a reasonably safe coupling, except it be tinctured with the results of such comparison. It may be that the one was comparatively safer than the other; and it may be that it was absolutely safe with respect to the manner in which Finnan was killed; yet that fact can have no bearing unless it affects the real question at issue—did the master provide suitable and safe, or ordinary machinery or appliances which, with reasonable care, could be used with reasonable safety—which was the master's duty and the question for the jury. C., R. I. & P. R. R. Co. v. Lonergan, 118 Ill. 41; C. & E. I. R. R. Co. v. Driscoll, 176 Ill. 330; C. & E. I. R. R. Co. v. Kneirim, 152 Ill. 458. The question then as to whether the appliance was reasonably safe may be said to be independent of the question whether a safer or better device exists; it having been held that the master's duty is not to furnish the safest or the best, but that his obligation is met by the maintenance of such as are reasonably safe for the purposes intended. It further appears from the evidence that this kind of device is the ordinary one, generally used upon all railroads for the last twenty or more years; and that the deceased was familiar with its use. The true theory of the case is that the liability of appellant, as charged, must consist in furnishing an

individual appliance which was not reasonably safe in use, and which must amount to negligence; and we have no doubt that the evidence admitted and complained of tended to divert the issues without tending to support them, was not based on any material allegation of the declaration and was therefore incompetent, irrelevant and immaterial, and should have been excluded. Some effort was made by appellant to show that certain of these devices, alleged by appellee to be the best and safest, were also dangerous in use, and that drawbars of such devices would pass likewise; particularly when the witness Frank Cook so testified, which evidence was excluded by the court; and it was not permitted to contest the point. If the evidence admitted was material, appellant should have been permitted to offer proof in answer; and excluding its proof on the matter would have been error. But as the point was not properly in issue, it can not be said that appellant was prejudiced by the rejection of its proof thereon.

The next ground urged against the action of the court is that appellee was permitted to propound an impeaching question to her witness, William Paul, and upon his negative answer, to follow it by the usual affirmative proof in impeachment. Upon examination of the matter we find that the witness testified that he did not state to Louis Coons that the swing beam and sand board were three inches too short, and that the witness afterward, in answer to the usual form of question, testified that, Yes, Paul had stated that the swing beam on one of the cars, by which Finnan was struck, was two or three inches too short, in substance. The general rule is that a party may deny or contradict by other evidence any material fact or facts stated by his witness; but may not discredit him generally, by evidence for that purpose alone. The object and purpose of the question and answer here shown by Coons was to impeach and discredit Paul. It should not have been admitted on the general principle without reference as to whether the point in relation to which the statement was made, was material.

Complaint is made of instructions given and refused by

the court.   Among those given for appellee appears the following:

"The court instructs you that while it is true that a master is not required to use every new or improved device, yet it is his duty to use ordinary care in furnishing appliances that are reasonably safe, and if the master uses an appliance that is dangerous and unsafe, when there are other and usual appliances in common use that he might use, and a servant is injured by reason of the dangerous appliance while he is in the usual course of his employment, and while in the exercise of due care and caution for his own safety, then the master is liable for damages for such injury."

This instruction is bad.   If it is based upon the evidence it can not be sustained, because it proceeds upon the assumption that an appliance furnished by the master was dangerous *per se*, and that in its use the master is negligent because there are other appliances not dangerous which he might use.   If intended as an abstract proposition it is not applicable to the case; which is one charging negligence against the master in maintaining an appliance in bad repair, thereby rendering it not reasonably safe.

A criticism, applicable to all of the appellee's instructions given upon the general issues of the case, is that they ignore the question as to whether deceased, Finnan, knew or might reasonably have known, or had equal means with appellant of knowing of the alleged defective condition of the coupling appliance.   However, this point was quite fully detailed in the instructions given for appellant, and we believe no harmful error resulted by reason of the defective instructions thus given.

An instruction was asked by appellant and refused by the court, which told the jury, in substance, that if the deceased knew the kind of appliance used by the company on the cars for coupling and continued in the service to handle such appliance, he assumed the risks and dangers of that service and of using that kind of appliance, and defendant was under no obligation to change the kind of appliance used or substitute another for it; and plaintiff can not recover alone on the failure of defendant to supply such

other and different appliance; and another, that the defendant was not required to discard the use of a certain coupling device and to equip with a new device or one that was absolutely safe; and it was required to furnish, new or old, one that was reasonably safe. We think that these instructions under the evidence in this case state the law and should have been given, and it was error to refuse them. Other instructions refused, complained of, seem to have been sufficiently given by the court in instructions given.

It is said that certain remarks of counsel for appellee in his closing argument were prejudicial to appellant. The record does not disclose the remarks, nor the rulings of the court, nor the exceptions thereto. An effort has been made to place them in the record by incorporating the same with the motion for a new trial, which we regard as wholly ineffective for such purpose. The remarks and exceptions thereto should have been made a part of the bill of exceptions by the trial judge in order to raise any question in this court concerning them.

The verdict of the jury was as follows, as appears entered in this record :

" We, the jury, find the defendant guilty, and we assess the plaintiff's damages at two thousand six hundred and sixty-six one-hundredths dollars ($2,666.66.)"

And upon this verdict the court entered judgment for $2,666.66; which action of the court is assigned as error. We feel satisfied the court erred in entering the judgment for the larger amount, shown in figures in the verdict. Where the verdict of the jury is expressed in ambiguous or doubtful language, the jury should be instructed to re-form it before receiving it as such, so that their determination might admit of no doubt and be intelligible. Whether they meant one or the other amount, if doubtful, should have been referred to them.

At all events if the verdict be received in that form the lesser amount should have been presumed as the one intended, as between the two in a matter of presumption.

For the errors indicated the judgment of the Circuit Court will be reversed and the cause remanded.