### Charles Volkmann v. William Brossman.

#### Gen. No. 12,707.

1. CONDUCT OF COUNSEL—*improper to show that insurance company is defending.* It is error to permit counsel for the plaintiff to show that the defendant in a cause will suffer no pecuniary loss by reason of a verdict against him and that an insurance company is defending the action.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Reversed and remanded. Opinion filed October 23, 1906.

HORTON & BROWN, for appellant.

JACOB C. LEBOSKY, for appellee.

MR. PRESIDING JUSTICE FREEMAN delivered the opinion of the court.

This is an action in which appellee seeks to recover for an injury to his left hand. The material facts are as follows: Appellee is a structural iron worker, and at the time of the accident was employed by appellant, who was a contractor for iron setting. The working gang of which appellee was a member consisted of four persons, one of whom named Lockhart was acting as foreman of the gang, which was at the time "handling iron with derricks." The foreman gave directions to appellee and a man named Wangler "to hook on" to a pile of iron beams which were lying on the fourteenth floor of a structure across the floor joists over which apparently the permanent flooring had not yet been laid. Wangler stepped to one side of the pile of iron beams and appellee from the opposite side dropped the chain used in hoisting with the derrick, and as soon as he "got slack enough to hook it," shoved it through under the pile of iron beams and between the iron floor joists toward Wangler, who taking hold of it pulled it through under the pile which was about two feet high or more. Appellee passed the hook of the chain through first and says: "When Wangler put the hook on I was feeding slack through to him so that he could get slack enough to hook the chain." As soon as this was done apparently, the foreman gave the signal to hoist, and the strain was put on and began to tighten about the load. This caused the pile of beams suddenly to come compactly together, which the witnesses call "boxing" them, and the hook slipped down the chain, catching the forefinger of appellee's left hand, causing the loss of that finger and also injuring to some extent the rest of the hand. Appellee called out quickly, the load was lowered and his hand released. It is claimed that he did not see the signal to hoist and that it was negligently given before he was ready.

On the other hand it is claimed that appellee was in-

jured by reason of his own negligence; that he had been cautioned that day or the day before about the danger of taking hold of chains when a strain was put on and told to keep his hands off the chain at such time or he would get caught.

The statement of Wangler, since deceased, which was read in evidence, was that as the load lifted it had swung toward appellee, who "laid his hand out on the load to push it from him and his hand caught in the chain just as the beams boxed." It appears from appellee's testimony that "the rest of the hand is just about as good as it ever was, regardless of the finger being off," and he commands the same wages now as before the injury.

It is apparent from the record that there are contested questions of fact, namely, whether the accident was caused by negligence of appellant or whether appellee's own negligence was responsible for the injury for which he seeks to recover. These were questions for the jury to determine from the evidence, and should have been submitted free from any improper evidence or artifice tending to prejudice the jurors or obscure the simple questions of fact which it was their province to determine.

In the preliminary examination and selection of jurors it is quite apparent that special and unnecessary pains were taken to impress upon them that the Travelers Insurance Company was interested in the defense. The purpose of this was made obvious in the course of the trial. In the cross-examination of the defendant occurred the following:

"Q. Now, Mr. Volkmann, have you any interest in the defense of this case?

Mr. Miller: I object to it.

The Court: Oh, that is competent with reference to the interest of a witness in any case, whether it is a party or a witness.

Mr. Miller: Well, it appears that he is a party to the suit.

Volkmann v. Brossman.

The Court: Well, I know, but whether he has any pecuniary interest in the result. It is a question that could more properly come from the other side. (To which ruling of the court the defendant excepted.)

Q. Have you any interest in the result of the suit?

The Court: Well, I don't know. It has been held erroneous to permit the plaintiff to show that it was an insurance company that was the defendant.

Mr. LeBosky: That is not the question at this time. It is always proper to ask the defendant what his interest is.

Mr. Miller: I object.

The Court: Well, ask him. You may have the question answered and take your own risk. (Exception.)

Mr. LeBosky: Q. You may state what interest, if any, you have in the result of this case.

A. Well, I will tell you; a contractor, if he has many accidents, nobody will give him any more jobs and I want to have as few or none at all—that is what I want.

Q. Will you state whether you have any pecuniary interest in the result of this case.

Mr. Miller: I object.

The Court: As to this one case?

Mr. LeBosky: Yes, sir.

The Court: Let him answer. (Exception.) A. I don't understand you.

The Court: Well, whether if there is a judgment against you here you will have to pay it; that is what he wants to know.

A. Well, I don't have to pay Brossman if he should happen to recover damages or anything like that; I don't think so.

Mr. LeBosky: Q. You won't have to pay it? A. No, sir.

Mr. Miller: I ask that the answer be stricken out.

The Court: Save your point. (Exception.)

The Court: I think it is error, but I have warned LeBosky about it."

That the trial court was right in deeming it error, is

not, we think, open to doubt. The questions quoted were not called out by anything in the previous examination of the witness, who was the defendant in the case and appellant here. It was not in any sense proper cross-examination. The questions were not asked for the purpose of discrediting the witness nor as a means of impeaching his testimony. The sole and only purpose, whether consciously or not, was without doubt to impress upon the jury that the contractor was insured against loss himself by any verdict that might be rendered and that the loss would fall on an insurance company. This view is confirmed, if confirmation be necessary, by remarks of appellee's attorney in his address to the jury. We quote again from the abstract:

"I honor the man who can work hard and steadily and work enough to become a contractor. Volkmann: You will remember that I asked him, 'Are you pecuniarily involved in this judgment? A. No, sir; I myself, not a penny of it.'

Mr. Miller: I object to counsel discussing that in this case.

The Court: Well, save your point. It is a question which I think may be discussed.

Exception by the defendant.

Mr. LeBosky: That is a question that is necessary in this case. They brought up this proposition by trying to argue that Volkmann is going to be mulct in damages. It is for you to say."

What possible bearing could it have upon the only questions properly before the jury whether the defendant himself would have to pay the judgment, if any, rendered against him or whether he would be protected from personal loss by accident insurance? That matter had no place in the case, and the allusions made to it both in the cross-examination of the defendant and in the address of appellee's attorney to the jury must be regarded either as a covert appeal to a supposed prejudice of jurors against such company or for a verdict in his client's favor on the ground that it

would be paid by a supposedly wealthy insurance company and not by a workman who had risen to be a contractor. Efforts of this kind to win verdicts not upon the evidence, the law or the justice of the case, but upon irrelevant considerations having no place in such controversies, can not be too strongly condemned. In George A. Fuller Co. v. Darragh, 101 Ill. App. 664, 666, where as here attention was called to the interest of a casualty insurance company in the case, and it was afterward sought to be excused on the ground that the statements were made for the purpose of selecting a disinterested jury, it was said by Mr. Justice Waterman:

"Jurors may be asked if they know certain persons or have business or other relations with them, but under the guise of obtaining a fair jury, information calculated to prejudice jurors against either party cannot be given, and the trial court should not only prevent this, but if satisfied that despite its rulings jurors have thus been swerved in the considerations, should set aside verdicts so obtained." See also Eckhart v. Schaefer, 101 Ill. App. 500-505, and cases there cited.

In New York it has been held that "it is not proper to inform the jury of that fact in any manner. It is not material to any issue involved in the trial of the action and certainly plaintiff's counsel ought not to be permitted to do indirectly what he would not be permitted to do directly." Manigold v. Black River T. Co., 80 N. Y. Supp. 861, 862. In that case, although the trial court struck out the answer, the fact that "plaintiff's counsel improperly got the fact before the jury" was held reversible error. So also in Cosselmon v. Dunfee, 172 N. Y. 507. See also Iverson v. McDonnell, 78 Pac. Rep. (Wash.) 202.

It is urged that a just judgment should not be reversed, even if error was committed. This is true where it is evident that substantial justice has been done in the trial court. In the present case it was the

province of the jury to determine the question of lia-bility as well as damages. Had the verdict been clearly uninfluenced by irrelevant and improper considerations and unquestionably justified by the evidence, a very different case would have been presented. As the cause stands, however, it is the clear duty of the court to reverse the judgment and remand the cause for a new trial.

*Reversed and remanded.*