## Ray Moore, Appellee, v. Springfield & Northeastern Traction Company, Appellant.

1. MASTER AND SERVANT—*contributory negligence.* Where plaintiff twenty years of age after working nineteen days for defendant electric railway company in learning the work of a substation attendant is directed to clean out a high tension room and while so doing is injured by an electric current, an instruction which limits the care of plaintiff to what he did while in the high tension room, is erroneous, there being evidence that he was guilty of negligence in going into the room without first opening the outside switches.

2. EVIDENCE—*as to different construction of wires and switches in high tension room.* Where plaintiff an employe of defendant electric railway was injured while cleaning a high tension room, evidence that a different construction of the wires and switches would have been safer for the employes is improperly admitted where the issue is whether defendants used reasonable and ordinary diligence to provide reasonably safe appliances.

3. ARGUMENT OF COUNSEL—*improper remarks.* It is error for plaintiff's attorney to persist in making remarks which are objected to and sustained, to the effect that plaintiff was employed after a number of employes had gone on a strike.

Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the October term, 1912. Reversed and remanded. Opinion filed March 18, 1913.

**Statement by the Court.** This is an appeal from a judgment for $10,000, recovered by appellee against appellant for personal injuries. Appellant operates an electric interurban railway from Springfield to Lincoln. It has three wires along its railway which carry an alternating current of about 33,000 volts. The railway cannot be operated by the alternating current and appellant has substations at different points along its line with machinery and apparatus therein for transforming the alternating current into a direct current of 650 volts, which is then transferred to the trolley line for operation of the cars. Variations in the current require in addition to the permanent stations, portable stations which are moved from place to place as required. The portable stations are in box cars, which are divided into two compartments, a high tension or alternating current compartment and a direct current compartment. There is no means of access from one room to the other, each opening to the outside of the car. In the high alternating compartment the current is transformed to a direct current.

There are two sets of switches between the alternating current wires and the transforming apparatus in the high tension room. One set of three switches consists of metal blades about fifteen inches long, about ten feet from the ground on a pole outside the car. These switches are hinged at the lower end where they connect with a wire running to the substation, swing upwards into a metal groove at the other end, where they connect with the main high tension wires. These switches are operated by means of a pole with a hook on the end by which the switches are opened and closed. When these switches are open, the switch blades are dead and the current is entirely cut off from the car. The other set of three switches are eighteen inches apart inside the car with the hinged end below connecting with the wires running from the switches on the pole, and swing upwards to connect, when the switch is closed, with the wire running to the trans-

former. These switches are also opened and closed with a pole. When they are open the blades are alive unless the outside switches on the pole are open. In 1910, when appellee was over twenty years of age, he started to work for appellant at a substation at Bement to learn the work of a substation attendant. After eight days work at Bement appellee was given charge of a portable station at Elkhart during the night time. After being at work at this station eleven days appellee was on the afternoon of July 29, told to go the next morning into the high tension room and clean it out. He went into the high tension room without opening the outside switches, opened the inside switches, and while cleaning out the room appellee appears to have touched one of the blades of an inside switch and at the same time a bolt in the floor of the car, making a ground connection, and was injured and brought this suit to recover damages.

The case was tried on three counts of the declaration which are common law counts, none of which aver any statutory negligence. The first count avers that plaintiff did not know that when the blades of the switches were pulled down they were charged and that it was the duty of the defendant to have informed plaintiff of the danger of coming in contact with the blades of the switches when they were open and that defendant was negligent in ordering, through its superintendent, plaintiff to go into the high tension room without properly instructing the plaintiff. The second count avers the inexperience of plaintiff and the duty of defendant to inform plaintiff of the perils of the work and negligence in putting plaintiff to work in such a dangerous place without informing him of the danger. The third avers negligent construction of the apparatus in that the inside switches were charged with the electric current when open. The first two counts aver that the plaintiff was in the exercise of due care while at work in said substation; the third count avers that he was in the exercise of due care

while at work, and does not aver that the risk was not assumed by plaintiff.

H. C. DILLON and GRAHAM & GRAHAM, for appellant; GEORGE W. BURTON, of counsel.

WILLIAM G. CLOYD and THOMAS F. FERNS, for appellee.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

The appellant testified that "Part of my duties were to keep the machine and car clean and the machines running best I could;" that L. A. White the superintendent, took him to Elkhart on July 18, for the purpose of putting him to work but did not examine him or ask him any questions as to his knowledge of electrical apparatus and gave him no instructions concerning the use of the dangerous apparatus; that at a subsequent visit on July 29, the superintendent told him to go the next morning into the high tension room, pull the blades there, and clean up the room; that he knew there were outside disconnecting switches but did not know whether they would break the current if pulled out, that he thought they were for lightning protection. The then superintendent of appellant not now in its employ, testified that he fully examined the appellee as to his electrical knowledge, explained the use and purpose of both sets of switches, saw him operate the apparatus and told appellee not to go into the high tension room until after he had opened the outside switches.

Two of the counts aver that appellee was in the exercise of due care while at work in the substation. With this conflict in the evidence the court, at the request of appellee gave an instruction "that if from the evidence and under the instructions of the court you shall find the plaintiff has proved his case as laid in his second amended declaration or any one of the

first, second or third counts thereof by a preponderance of the evidence you should find the defendant guilty'' and assess his damages, etc.

This instruction, read with the declaration, limits the care of the appellee to what he did while in the high tension room and authorizes a verdict notwithstanding the fact, if the facts were as testified to by White, that appellee was guilty of negligence in going into the high tension room without first opening the outside switches. *Krieger v. Aurora, E. & C. R. Co.,* 242 Ill. 544; *Illinois Terra Cotta Lumber Co. v. Hanley,* 214 Ill. 246; *Gould v. Aurora E. & C. R. Co.* 141 Ill. App. 348. This instruction should not have been given for the reason that while directing a verdict it ignored the defenses of assumed risk and contributory negligence in going into the high tension room without opening the outside switches, and unduly limited the time during which appellee was required to prove he was in the exercise of due care.

It is also insisted that there was error in the admission of evidence. An electrical engineer testified in behalf of appellee, over the objection of appellant, that it would have been practical to have had the high tension wires enter at the top of the substation and the inside switches so constructed that the blades would not be charged with electricity when the switches were open and that a device could be constructed so as to protect the switch when open, but that he did not know of any device that would be practical to prevent employes from touching the switch; that ''the practical and safest way would be to connect the high tension wires to the top of the switch and leave the blade when open harmless.'' There is no averment in any count that brings this action under the Act of June 4, 1909. Under the averments of the declaration so far as the construction of the apparatus was concerned, the question to be submitted to the jury is whether the appellant used reasonable and ordinary diligence to provide reasonably safe appliances for the safety of its

628    APPELLATE COURTS OF ILLINOIS.

Moore v. Springfield & N. E. Traction Co., 180 Ill. App. 623.

employes in the construction of the devices and were the premises of appellant reasonably safe. It was error to overrule the objection to the testimony that a device could be constructed to protect the switch and that some different construction of the devices and some other method of construction would be safer for the employes. *Chicago & E. I. R. Co. v. Driscoll,* 176 Ill. 330; *Chicago, R. I. & P. R. Co. v. Lonergan,* 118 Ill. 41; *Eckhart & Swan Milling Co. v. Schaefer,* 101 Ill. App. 500; *People's Gaslight & Coke Co. v. Porter,* 102 Ill. App. 461; *Madison Coal Co. v. Caveglia,* 122 Ill. App. 419; *Kehler v. Schwenk,* 13 L. R. A. 374, 144 Pa. St. 348.

It is also insisted that the judgment is excessive and that counsel for appellee made inflammatory and prejudicial statements both in the opening statement and his closing argument to the jury. In the opening statement he stated there was a strike among the employes at the time appellant was employed, an objection to this statement was sustained. Counsel then continued, appellant had discharged seven or eight men, an objection to this was sustained. The rulings of the court had no effect on counsel for he continued his improper statements by again stating if it had not been for the discharge of these men this boy would not have been put to work, to which an objection was again sustained. The rulings of the court appear to have had no effect on counsel. The ruling of the court could not do away with the effect of such improper and inflammatory statements. In the cross-examination of White and by volunteer statements of appellee, the facts that there had been a strike and trouble between appellant and its employes were improperly brought to the attention of the jury. There were also improper and prejudicial remarks made in the final argument. While we express no opinion concerning the amount of the judgment, yet no party should be permitted to try to profit by such unfair and unprofessional means. The statements of counsel with the repetition of the subject

matter to which the court had sustained an objection show a deliberate intention to override the law and defy the rulings of the court. They call for a more pointed rebuke and with the other errors require a reversal of the case. *Wabash R. Co. v. Billings*, 212 Ill. 41; *Chicago City R. Co. v. Gregory*, 221 Ill. 599.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*