T. L. FOLEY, Administrator, Appellee, v. CUDAHY PACKING Co., Appellant.

**Action for Damages for Personal Injury:** MOTION TO STRIKE: AMENDED ABSTRACT. A motion to strike an amended abstract,
1   filed shortly after the time fixed by the rule, will not be granted, where there is no prejudice, and the submission of the cause is not delayed.

**Denial of Abstract:** WHEN DISREGARDED. A denial of an amended
2   abstract, when not confessed, will be disregarded when not sustained by a certification of the record.

**Former Action:** REMOVAL; DISMISSAL. The commencement of an
3   action in the state court which is subsequently removed to the

federal court, and there dismissed by the plaintiff without trial or prejudice, is not a bar to another action for the same cause in the state courts.

**Administrators:** WHO MAY ACT.   Under Code section 3297 a nonresident may be legally appointed an administrator in this state.

**Examination of Jurors:** DISCRETION OF TRIAL COURT.   The latitude to be allowed in the examination of jurors is left largely to the discretion of the trial court, and in the absence of abuse of this discretion the appellate court will not interfere.

**Contributory Negligence:** JURY QUESTION.   Plaintiff's intestate, who was working on an elevated staging, left it and in his absence some of the planks were removed, and on returning to work the staging broke and he fell and was killed. *Held*, the question of his contributory negligence in not ascertaining the changed condition of the staging was properly submitted to the jury.

**Master and Servant:** NEGLIGENCE: EVIDENCE.   It is the duty of the master to provide and maintain a safe place for the servant to work, and when a staging is rendered unsafe by order of one in charge of the work for the master and injury results to an employe, the master is chargeable with negligence. Evidence considered and held to show negligence.

*Appeal from Woodbury District Court.*—HON. JOHN F. OLIVER, Judge.

WEDNESDAY, JANUARY 28, 1903.

THE plaintiff brings this action, as administrator of the estate of Iver Olson, deceased, to recover damages for a personal injury resulting in the death of said Olson. The defendant operates a packing plant at Sioux City, and at the time in question was engaged in making repairs and improvements on the buildings used in connection with such plant. Plaintiff's intestate was employed in the work as a carpenter, and on the day of his accident was engaged upon a scaffold elevated some twenty-seven feet above the ground, the boards of which broke, whereby he fell to the ground, and sustained injuries from which he

died the next day. It is charged that the defendant negligently failed to maintain such scaffold in a safe condition for the work in which Olson was engaged. There was trial to a jury and verdict and judgment in favor of plaintiff. Defendant appeals.—*Affirmed.*

*L. B. Robinson* and *Shull & Farnsworth* for appellant.

*J. W. Hubbard* and *Wright, Call & Hubbard* for appellee.

BISHOP, C. J.—Appellee has filed an amended abstract, and appellant moves to strike the same—first, because not filed in time; second, because the same is wholly un-

1. MOTION to strike amended abstract.

necessary and incorrect; and, third, because appellant's abstract sets forth sufficiently the record to fairly present the questions raised by the assignment of errors. Subject to such motion to strike, appellant files a denial of said amended abstract, and avers that the same is incorrect and unfair, and does not contain the entire record. The amended abstract was not filed within the time fixed by the rule invoked by appellant. It was not long delayed, however, and it does not appear that appellant was in any way prejudiced thereby, or that therefrom any delay occurred in the submission of the cause. Where such clearly appears to be the case, we have frequently overlooked an infraction of the rule, and we are agreed such should be done in this case. We cannot consider the second and third grounds of the motion. Under rule 22, a denial of appellant's abstract by the appellee is to be taken as true unless appellant sustains

2. DENIAL of abstract: when disregarded.

his abstract by a certification of the record; and a denial by appellant of an amended abstract filed by appellee, unless confessed, must be disregarded when not sustained by a certification of the record.

II. The assignment of error first presented in argument raises the question of the jurisdiction of the trial

court over the parties and the subject-matter of the action. It appears that Olson died on April 3, 1898. On April 25, 1898, letters of administration were granted upon his estate to Mary Storsend, who qualified according to law. Thereafter, and at the January, 1899, term, said Mary Storsend, administratrix, commenced an action in said court against this appellant upon the identical cause of action here involved, which action was removed from said court, by proper proceedings, to the circuit court of the United States, Northern district of Iowa, and there retained. That upon a trial of said action in said circuit court, the same was dismissed by said administratrix without final determination and without prejudice. Thereafter said Mary Storsend, administratrix, resigned, and this plaintiff was appointed administrator in her stead. This action was then brought by him in the state court. The matters above referred to are set up as a separate defense in the answer, and it is said that, by reason of the facts alleged, there was no jurisdiction in the court below to hear, try, and determine this action; that the sole jurisdiction over the same rests and is in said circuit court of the United States. Proof of the facts alleged having been made, the defendant raised the point by motion to direct a verdict at the close of all the evidence, and again by way of motion for new trial.

We can agree with counsel for appellant that in a case brought in the state court, and proper steps being taken to remove the same into the federal court, the state court has no further jurisdiction to act in the case.

3. FORMER action: removal: dismissal.

We do not agree, however, that where a plaintiff in such case chooses to dismiss his action after removal, and without prejudice, he cannot again prosecute an action for the same cause in any forum save that of the federal court. The only case to which our attention has been called, holding the doctrine contended for is *Railroad Co. v. Fulton*, 59 Ohio St. 575 (53 N. E. Rep. 265,

44 L. R. A. 520). In that case reliance was placed
upon *Cox v. Railroad Co.*, 68 Ga. 446. An examination
of the latter case will disclose that the point in question
was not involved. It appears that an action had been
commenced in the state court, and removed to the federal
court by proper proceedings, where it was dismissed. An
effort was made to revive the action in the state court, the
evident purpose being to avoid the running of the statute
of limitations against the cause of action involved. It was
held, in effect, that, the cause having been removed to the
federal court, there was no jurisdiction in the state court,
to take further cognizance of the same action; that pro-
ceedings in the nature of an application to revive the
action so previously commenced and dismissed must be
made to the court having jurisdiction thereof. The ruling
had no reference to the cause of action as distinguished
from the action itself. The Ohio case is criticised with
some severity in *Gassman v. Jarvis* (C. C.) 100 Fed. Rep.
146, where it is said: "When a cause has been dismissed
out of a court of the United States without any trial or
determination of the merits, it is not perceived why a new
suit may not be brought on the same cause of action in
any court of competent jurisdiction. The state court
possesses original jurisdiction of all such causes of action.
The removal of the cause, and its subsequent dismissal
untried and undetermined, cannot, under any known rule
of law, be held to be a merger of the cause of action; nor
can the removal and dismissal of the cause be pleaded in
abatement of the new suit brought in the state court."
See, also, *Wilson v. Milliken*, 19 Ky. Law Rep. 1843 (44 S. W.
Rep. 660 42 L. R. A. 449, 82 Am. St. Rep. 578); *Bush v. Ken-
tucky*, 107 U. S. 110 (1 Sup. Ct. Rep. 625, 27 L. Ed. 354);
*Swift & Co. v. Hoblawetz*, 10 Kan. App. 48 (61 Pac.
Rep. 969. Such we conceive to be the correct conclusion,
and we accordingly hold that this contention of appellant
is without merit.

III.   A  further  assignment  of  error  questions  the
capacity of the administrator plaintiff, and the regularity
of his appointment.   It appears that Foley was at the
time of his appointment, and still is, a non-
resident  of  this  state;  that  he  resides  in
Illinois, and there executed his bond and took
the oath as administrator.   His appointment is not assailed
upon  any  other  ground.   It is the rule in some of the
states that an appointment of a nonresident as adminis-
trator  is  a  void  proceeding,  and  subject  at  any  time  to
collateral attack.   Such rule has not been adopted in this,
and  in  still  other  of  the  states.   Tue  provision of the
statute of this ·state authorizing the appointment of an
administrator contains no limitations.   Code, section 3297.
The express point here made by appellant was ruled upon
by this court in *Railway Co. v. Gould,* 64 Iowa, 343.   In
that case we held that mere· nonresidence alone does not·
disqualify one so that he may not be lawfully appointed
an administrator in this state; that the fact of nonresi-
dence is to be considered simply in connection with the
ability, character for, integrity, etc., of the proposed ap-
pointee, the magnitude and character of the estate, and
the extent of personal attention the same will probably
require.   No sufficient reason is presented for disturbing
the rule thus declared, and we therefore adhere to it.

IV.   In  the  examination  of  jurors,  each  was  asked
upon his *voir dire* by counsel for plaintiff, "Have you any
connection of any kind with any casualty or employers'
insurance company?"   In each instance the
question  was  objected  to,  the  objection  over-
ruled,  and  an  exception  taken.   Such ruling
is  assigned  as error.   It is common knowledge that many
companies and corporations have been formed in this·
country for the purpose of, and are engaged in, the busi-
ness of insuring employers of labor against damages grow-
ing out of personal injuries sustained by employes.   Of

necessity, such business is carried on by agents, and so it is that in most cities and towns one or more of such agents can be found. It is easy to understand that the interests of such companies lie on the defensive side of cases such as the one at bar. And if the defendant happen to be insured in some one or more of such companies, the interest becomes a direct and active one. That a defendant in an action of this character may be insured in some such company is immaterial of itself. But it is manifest that a plaintiff may not desire to have the jury which is to try his case made up, in whole or in part, of the agents or employes of such an insurance company. The fact of such employment would not constitute a ground of challenge for cause, but, as parties and their counsel cannot be expected to know personally every juror who may be called into the box, an examination sufficiently broad should be permitted to enable a party to determine upon his peremptory challenges. "It is the general and well-established practice to allow considerable latitude in the examination of persons called to act as jurors, not only to facilitate the discovery of grounds for cause, but to enable the parties interested to discover any peculiarity or conduct, association, character, or opinion, or any predilection, of the person under examination, or other circumstance which, in the opinion of the examiner, might influence the person as a juror, and affect his verdict." *State v. Dooley*, 89 Iowa, 584. Such examinations must be left largely to the sound discretion of the trial court, and it is only when an abuse of such discretion is clearly shown that this court is authorized to interfere. The ruling complained of does not involve any such abuse of discretion.

V. At the close of the evidence for plaintiff, the defendant moved for an instructed verdict upon substantially three grounds, which are presented in the following order: First, that the evidence shows that plaintiff's intestate was guilty of contributory negligence; second,

that the negligence complained of was that of a co-employe, for which defendant is not liable; and, third, that there is no evidence of negligence on the part of defendant.

We think the first ground of the motion not well taken. In respect thereto, it is sufficient to say that the evidence shows the scaffold from which plaintiff fell was floored by

6. CONTRIBU-
TORY negli-
gence: jury
question.

a double thickness of two-inch plank, and was elevated some distance above the ground. In the performance of his duty, Olson had left the scaffold and gone into the building, and, while gone, some of the flooring planks were removed without his knowledge, leaving the floor but one plank in thickness. Coming out of the building, he stepped upon the scaffold, and the single plank broke, precipitating him to the ground below. Whether, under the circumstances shown, there was anything to particularly call his attention to the scaffold floor, or whether there was any reason why he should have made an examination thereof before stepping upon it, and, as well, whether he should have anticipated a change in the construction of the scaffold by the removal of a portion of the floor planking, were clearly questions for the jury, and we think there was no error in submitting such questions for a verdict.

The second and third grounds of the motion may be properly considered together. As to the charge of negligence on the part of the defendant, it is said in the motion that "the evidence conclusively shows the defendant company furnished sufficient and suitable material for the erection of the scaffold in question, and that plaintiff's intestate, assisted by his co-employes, erected the same, and defendant is not liable for the manner of its construction and maintenance"; and, further, that "the evidence shows conclusively that the scaffold in question was changed as the work progressed, by reason thereof, and the defendant is not liable if the scaffold became unsafe on account of the changes therein in the progress of the work."

No contention is made in the case as to the original construction of the scaffold, and such phase of the question need be given no further consideration. That t'ere was

**7. MASTER and servant: negligence: evidence.** sufficient and suitable material on the ground for the proper maintenance of the scaffold, we think, may be conceded, although the point is controverted in the evidence. The record shows that the work under construction was an inclined way, running up the side of a slaughter house, commencing on the ground and landing at one of the upper stories of the building. On the side next to the building it was fastened thereto, and on the outer side it rested on supporting posts or pillars. It was designed to drive cattle thereon. from the ground up into the slaughter house. The scaffold in question was a temporary structure, and was erected to facilitate the erection of the permanent structure,—said inclined way. The work was begun at the ground, and, as it progressed, further and higher scaffolding was erected. The work in which Olson was engaged at the time of his accident was in bolting timbers to the building, upon which to rest that side of the inclined way. Our attention is not called to any evidence to the effect that the removal of the planks from the scaffold floor was in connection with making any change in such scaffold. There is evidence tending to show that, instead of resorting to the supply of planks provided, the scaffold planks were taken and used for another and distinct purpose. Now, the charge of negligence relied upon by plaintiff is in connection with the unannounced removal of the flooring planks, which, it is said, rendered the scaffold dangerous to stand or walk upon. It follows that the question of the sufficiency of the supply of planking, and, for that matter, the question of the making of a change in the scaffold, if it be insisted that the record presents such question, are material only as bearing upon the ultimate question of negligence involved in the removal of the scaffold flooring planks.

Taking into consideration the other facts in the case, which the evidence tends to prove, and there certainly is no theory upon which it can be said, as a matter of law, that the mere presence on the grounds of a sufficiency of material conclusively rebuts and overthrows all claim and charge of negligence on the part of the defendant. We think it must be held that the question of negligence is to be determined by having reference solely to the subject-matter of the removal of the scaffold floor planking, by whom removed, and under what circumstances. That it is the rule of all the cases that the master must provide and maintain a safe place for his employes to work is well settled. *Fink v. Ice Co.*, 84 Iowa, 322; *Newbury v. Manufacturing Co.*, 100 Iowa, 441. And a scaffold is a place to work, within the meaning of the rule. *Haworth v. Manufacturing Co.*, 87 Iowa, 765.

As we have said, there is no dispute as to the original safe construction of the scaffold. The material question of fact in the case is, therefore, by whom, and under what circumstances and authority, was the change made? For if it shall appear that such was the work of a co-employe, merely, or of any unauthorized person, it is clear that the master cannot therefrom be charged with negligence; and, if the verdict be predicated upon such facts, it should be set aside. Such, also, is the uniform current of the authorities. It appears in evidence in this case that the carpenter work was under the general charge of one Casey. There is also evidence tending to prove that one Blondin was the foreman in immediate charge, and that on the day of the accident he was the only person present having charge of the work; that the planks were removed and used elsewhere pursuant to his instructions. The witnesses who were workmen at the time testify that they received their orders from Blondin, and that he directed the manner in which the work should be performed. Without further reciting the evidence, we think sufficient

appears to warrant the jury in finding that the defendant had delegated the performance of its duty to maintain a safe place to work to Blondin, and that his act in ordering the plank in question removed was, in contemplation of law, the act of the defendant. The cases cited above in principle support this conclusion. See, also, *O'Neil v. Railway Co.*, 80 Minn. 27 (51 L. R. A. 590), and notes (s. c. 82 N. W. Rep. 1086); *McMahon v. Mining Co.*, 95 Wis. 308 (70 N. W. Rep. 478, 60 Am. St. Rep. 117); *Van Dusen v. Letellier*, 78 Mich. 492 (44 N. W. Rep. 572); *Ryan v. Bagaley*, 50 Mich. 179 (15 N. W. Rep. 72, 45 Am. Rep. 35); *Railroad Co. v. Peterson*, 162 U. S. 346 (16 Sup. Ct. Rep. 843, 40 L. Ed. 994); *Baldwin v. Railway Co.*, 75 Iowa, 297.

We conclude that there was no error in overruling the motion of defendant for a verdict.

VI. We have examined the instructions carefully, and, while open to some measure of criticism because of extreme length, we discover no prejudicial error. On the whole, we think the case was fairly tried, and there appears to be no reason for disturbing the verdict. —AFFIRMED.