# SUPREME COURT,

## STATE OF KANSAS.

## ·JULY TERM, 1903.

### PRESENT:

HON. WILLIAM A. JOHNSTON, CHIEF JUSTICE.
HON. WILLIAM R. SMITH,
HON. EDWIN W. CUNNINGHAM,
HON. ADRIAN L. GREENE, } JUSTICES.
HON. ROUSSEAU A. BURCH,
HON. HENRY F. MASON,

——— ———*

---

## SWIFT & COMPANY v. WILLIAM PLATTE.

### No. 13,043. (72 Pac. 271.)

#### SYLLABUS BY THE COURT.

1. CORPORATIONS—*Suits against Foreign Corporations—Right to a Review.* The statutory provision prohibiting a corporation which has not obtained a certificate from the secretary of state that certain statements have been made and filed by it from prosecuting an action in any of the courts of the state (Laws 1901, ch. 125, § 3; Gen. Stat. 1901, § 1283) does not apply to corporations which have been summoned into court and made to defend against actions brought by other parties; nor does it prevent such corporations from obtaining a review and a reversal of judgments rendered against them in such actions.

---

*At the December session of the July Term, 1903, with which this volume begins, there was a vacancy in the court, caused by the resignation of the Honorable JOHN C. POLLOCK, December 2, 1903, to accept the office of Judge of the District Court of the United States. On January 1, 1904, the Honorable WILLIAM D. ATKINSON, of Parsons, was appointed to the vacancy by Governor Willis J. Bailey.

2. JURY AND JURORS—*Examination in Personal-injury Cases.* In the *voir dire* examination of jurors in personal-injury cases brought against corporations or others, it is error to permit counsel for the plaintiff to ask questions which unnecessarily suggest and bring to the attention of jurors the fact that the defendant is insured in an accident company which will pay the fees of the attorneys defending and also any judgments resulting from accidents to employees of defendant.

3. ———— *Latitude in Examination.* Considerable latitude should be allowed in the examination of jurors to the end that all who have any bias or prejudice, or are otherwise disqualified, may be excluded from the panel, but the inquiry should never extend so far as unnecessarily to introduce extraneous matter of a prejudicial character that may improperly influence the verdict.

Error from Wyandotte district court ; E. L. FISCHER, judge. First opinion filed April 11, 1903. Reversed. Rehearing granted May 9, 1903. Second opinion filed December 12, 1903. Affirmed.

*Lathrop, Morrow, Fox & Moore, Frank Hagerman*, and *Alden, McFadden & Alden*, for plaintiff in error.

*Sutton, Maher & Sutton*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : This was an action by William Platte to recover from Swift & Company for injuries sustained by him while descending a dark stairway in the packing-house of the company. He was an employee of the company and had been at work in a part of the packing-house where the accident occurred about three weeks. The stairway by which Platte and his associates left the building was in two sections, the upper section being cased up and dark at all times except when artificially lighted. For the purpose of lighting it, an electric light was placed within the casement near the head of the stairs, and prior to the accident this light had been always burning when Platte

went up and down the stairway.   When he and others stepped inside on the night of the accident there was no light, and as he was about to descend and reached to the side for a railing or something to steady himself he lost his balance and fell, by which he suffered serious injuries.   His action is based on the negligence of Swift & Company in not maintaining sufficient light and in not providing a hand-rail.

There was no switch or other method of regulating the light in the stairway except in the engine-room some distance away.   It was alleged that the light in this stairway was frequently extinguished, a fact known to the company but unknown to Platte, and that, while the latter had passed up and down the stairway, he did not know of the uncertainty of the light nor had he observed that there was no hand-rail.

Another ground of negligence was the failure to provide a system of inspection to insure the burning of the light when workmen were necessarily using the stairway.

The trial resulted in a general verdict in favor of Platte and in special findings to the effect that he daily ascended and descended the stairway for two or three weeks prior to the accident, during which time the light at the head of the stairway was always burning; that in doing so he had opportunity to observe there was no hand-rail, and that he reached for a hand-rail just before he lost his footing and fell.   The jury were unable to determine how long prior to the accident the light in the stairway had been out, or who turned it out.   They also found that the plaintiff, by extending his arms in the stairway, could reach both sides of it, but were unable to state whether he would have lost his footing if he had placed his hands on both sides when descending.   The amount of dam-

ages awarded was $1850, and to reverse the judgment rendered this proceeding is brought.

First, it is contended that the plaintiff in error, being a foreign corporation and not having complied with all of the statutory regulations as to such corporations, is not authorized to do business in Kansas, or to maintain this proceeding. While the company had made the required annual statements it appears that it had not at the time paid the charter fees or taken other steps essential to the obtaining of a certificate of authority from the charter board. The statute provides:

1. Suits against foreign corporations.

"No action shall be maintained or recovery had in any of the courts of this state by any corporation doing business in this state without first obtaining the certificate of the secretary of state that statements provided for in this section have been properly made." (Laws 1901, ch. 125, § 3; Gen. Stat. 1901, § 1283.)

Assuming, but not deciding, that this provision applies to other requirements than the making of annual statements, we still think it is not a bar to the review sought here. It will be observed that the prohibition is directed at the bringing of actions and not at the making of defenses to actions rightly brought. Platte brought the company into court, and having forced it into litigation he is hardly in a position to say that it shall not contend with him to the end. The action mentioned in the statute refers to an ordinary proceeding in a court of first instance and not to an appellate proceeding brought to correct the errors of such court. The proceeding in this court, although in some respects distinct from the action in the trial court, and although the steps taken in the commencement of each are somewhat analogous, is purely appellate, and is, in a certain sense, a continuation of the controversy in the district court. Swift & Company had not a right

Swift v. Platte.

of action, but only a right of review, and while the company instituted the proceeding here it is still in an attitude of defense and is resisting the claims and contentions of the plaintiff below. The jurisdiction of the court in such cases is limited to a review of the rulings of the district court, and in the event of a reversal the case is remanded for a retrial. The commencement of such a proceeding cannot be regarded as the prosecution of an action, within the meaning of the statute, and the prohibition can never apply to the institution of a proceeding in error to one summoned into a trial court and made to defend against an action brought by another.

Exceptions were taken to the methods employed by plaintiff's counsel in impaneling the jury. In the 2. Examination of jurors. examination of jurors on their *voir dire* questions were asked which it is claimed suggested to them that the company had accident insurance which indemnified it against loss or any judgment that might result from this and other cases. The following questions were asked and answers given over the persistent objections of the company :

"Ques. If it should appear in the trial of this case that an insurance company which makes it a business to insure employees against injuries was hiring the attorneys and defending this case in the name of Swift & Company, would it make any difference to you in your verdict? Ans. No, sir; it would not make any difference.

"Q. You know of the fact that employees of Swift & Company and Armour & Company are insured by insurance companies? A. Well, nothing more than what I have been told.

"Q. You have been told? A. Yes, sir.

"Q. And that the insurance companies defend these suits? A. Yes, sir; I have been told so.

"Q. That they hire the lawyers and pay the judgments? A. Yes, sir.

"Q. Have you heard—do you know from hearsay—whether or not the insurance companies hire the lawyers and pay the judgments, if any are rendered? A. Nothing more than what I have heard.

"Q. That's it; have you heard it? A. Yes, sir; I have heard it talked of.

"Q. Would the fact that you have heard that the insurance companies defend those suits brought against the packing-houses, and that they indemnify the packing-houses against loss, make any difference in your own mind in rendering a verdict in a case where one of the packing-houses, or where Swift & Company, for instance, was the defendant? A. No, sir; I don't know as it would."

It is argued that the questions suggested the existence of facts which were intended and calculated to prejudice the jury against the company. Objections to the statements made having been overruled, it is said that they went to the jury with the force and effect of evidence, and that they were not relevant or competent upon any issue in the case. (*O'Neill Mfg. Co. v. Pruitt*, 110 Ga. 577, 36 S. E. 59; *Sawyer v. Shoe Co.*, 90 Me. 369, 38 Atl. 333; *Barrett v. Bonham Oil & Cotton Co.*, 57 S. W. [Tex.] 602.)

Considerable latitude should be allowed counsel in the examination of jurors, so that all who have bias or prejudice, or are otherwise disqualified, may be eliminated, but the inquiry should never be made to introduce extraneous matter of a prejudicial character that may improperly influence the verdict. Questions are not to be barred merely because the answers elicited would be incompetent under the issues in the case; nor are parties to be hampered in a thorough examination, made in good faith, to keep off the panel partial, prejudiced and unfit men. The inquiry may be extended to the social and business relations of the proposed jurors

3. Latitude in examination.

with the parties to the action or with any one connected with the litigation. It should, however, as before stated, be conducted in good faith, by pertinent inquiries, for the purpose of sifting the panel and excluding those who are disqualified or objectionable by challenges peremptory or for cause.

In this instance it is the view of the court that the examination was unnecessarily and erroneously extended. The inquiries were not so much directed at the possible connection of jurors with insurance companies or with those representing them, but mainly pressed upon the jurors questioned, as well as those listening, the fact that packing companies were insured, and that these companies were hiring the lawyers and would pay the judgment if any should be given. The statements were not limited to the placing of an insurance company behind Swift & Company, but they carry the idea that Armour and other packing companies rely on their insurance against accidents to their employees, and therefore have little concern as to the accidents or to the actions which may be brought to recover for the injuries. In a case somewhat like this it was expressly held that "in the examination of jurors in personal-injury cases it is error to permit counsel for the plaintiff to ask questions which allow the jurors to take into consideration the fact that the defendant is insured in a casualty company against loss from accidents." (*Eckhart & Swan Milling Co. v. Shaefer*, 101 Ill. App. 500.) This is deemed to be prejudicial error for which there must be a reversal.

The writer is unable to concur in this view. The scope of a *voir dire* examination must be left largely to the sound discretion of the trial court. There is no more important feature of a trial than the impaneling

of an impartial and unbiased jury, and courts are very liberal in allowing inquiries into the competency and qualifications of persons called as jurors. The examination serves a double purpose—first, to learn whether there is a disqualification or cause for challenge, and, second, to enable a party to determine whether he shall exercise the right of peremptory challenge given by statute. So careful is the law that a fair jury may be obtained that it not only provides for the exclusion of those shown to be partial or prejudiced, but it gives each party the added right to challenge a certain number not shown to be prejudiced or disqualified, whom the parties may desire to exclude for reasons not recognized by the law. Apart from admitted bias or prejudice, persons may be excluded from the panel because of possible prejudice on account of pecuniary interest, relationship, or business connection with the parties to the action. They may be excluded because of relationship or connection with the families or attorneys of the parties, or with others who have an interest in the litigation. If the parties to the case are nominal or representative the relation or connection with the real parties to the action may be shown, and be sufficient cause for challenge and exclusion. So here, if counsel for Platte had reason to believe that the insurance company, although not named as a party, was principally interested in the action, and that the persons called as jurors had or might have some relation or connection with that company or its agents which might affect the verdict, they had a right to make a searching inquiry as to the attitude of the company and the personal relations of the jurors to it. Of course, it should be done by pertinent questions and within reasonable limits, but the court, which has before it the jurors and counsel, can best determine the

Swift v. Platte.

character and extent of inquiry that may be necessary or proper. The questions asked in this case, as will be seen, were mainly hypothetical, and therefore were not stated as facts; and on the whole the writer is unable to say that the questions were not asked in good faith and for legitimate purposes. If we knew the proposed jurors as the counsel and court may have known them, we might readily say that good reasons existed for the character and extent of the inquiry. The counsel deemed it to be necessary, and the trial judge, who was acquainted with the local situation, decided that it was necessary and proper, and, in view of the large discretion vested in the trial court as to the extent of the inquiry, the rulings ought not to be treated as a ground of reversal.

I am authorized to state that Justices Greene and Mason join me in dissenting from the judgment of reversal.

The objections made to rulings on the admission of testimony are not regarded as substantial, and the court is united in the opinion that there was sufficient testimony to take the case to the jury and to sustain the findings and verdict. The case appears to have been fairly presented to the jury, and the exceptions taken to instructions given and refused are not sustained; but for the error committed in impaneling the jury the judgment of the district court will be reversed, and the cause remanded for a new trial.

SMITH, CUNNINGHAM, POLLOCK, BURCH, JJ., concurring.

JOHNSTON, C. J., GREENE, MASON, JJ., dissenting.

Swift v. Platte.

### OPINION ON REHEARING.

#### No. 13,043.    (74 Pac. 635.)

##### SYLLABUS BY THE COURT.

1. JURY AND JURORS—*Examination in Personal-injury Cases.*
In the *voir dire* examination of proposed jurors in personal-injury
cases it is not necessarily error to allow counsel for plaintiff to
draw attention to the fact of the existence of insurance companies
which indemnify employers against loss or damage which may
arise from injuries to their employees, and to conduct an inquiry,
in good faith and within reasonable limits, concerning the ques-
tions whether such jurors have any connection with, or interest
in, such insurance companies, and whether, in case such indem-
nity exists, it may affect their judgment or the verdict which they
may give.

2. ——— *Sound Discretion of Trial Court.* The extent of such
examination must be left largely to the sound discretion of the
trial court, and unless an abuse of it be clearly shown a review-
ing court will not interfere.

The opinion of the court was delivered by

JOHNSTON, C. J.: The only question presented and
considered on this rehearing was the one arising on
the impaneling of the jury. Was the inquiry as to
employers' accident insurance held by companies like
Swift & Company; and as to the possible interest
or connection of the proposed jurors with such in-
surance, prejudicial error? In the former opinion
the questions asked and replies given were set out
and, as will be seen, were largely hypothetical. In-
quiries were made of proposed jurors whether they
knew of the existence of companies which insure or
indemnify employers like Swift & Company against
loss or damage that may arise from injuries to their
employees, and also that the indemnifying companies
employ attorneys to defend actions that may be
brought by injured employees and pay any judgments
that may be recovered. The jurors responded that
they had been told of this but had no direct knowl-

edge of the fact, and that nothing they had heard would affect their minds or their findings in the trial of the cause.

It is conceded that proof of the existence of such companies, or that indemnity was furnished, was incompetent upon any issue in the case, and, of course, the facts could not be injected into the trial to create prejudice against the defendant company.  The inquiries were made on the *voir dire* examination of the jurors, and apparently to ascertain if they had any connection with, or interest in, such companies, or would be affected by the giving of such indemnity. It is a matter of common knowledge that employers do obtain indemnity, and that insurance companies do undertake to protect employers in litigation like this, and the jurors of whom inquiry was made had already heard that such was the fact.   An indemnifying company would be as much or more interested in the litigation as the defendant, and any one closely connected with, or related to, such company, or its agents, could hardly be regarded as a qualified juror. To enable a party to guard against the inclusion of prejudiced jurors it was proper for the court to allow a full and searching inquiry as to a possible connection of the proposed jurors with an indemnifying company or with its agents or attorneys, and whether they would be affected or prejudiced if such indemnity existed.   The inquiry should be conducted by pertinent questions asked in good faith and be confined within reasonable limits, but, having in mind how important it is that the panel be duly sifted and that all prejudiced and objectionable persons be excluded from it, we cannot say that prejudicial error was committed in this instance.

It is true that the fact that packing-houses such

as that of Swift & Company are protected by indemnifying companies from damage suits was made prominent, but that is too much a matter of common knowledge to be regarded as prejudicial. It is no more hurtful than the fact which counsel for the company brought out—that there is in existence a claim adjustment company which directs and assists injured persons in the recovery of damages. It appears that he asked jurors of their knowledge of such companies and, as a part of the inquiry, stated to them that such companies did exist and that a part of their business was to find persons who were injured and bring suits for them against their employers. It will be assumed that this inquiry was conducted in good faith, and how can we say that the one made by counsel for Platte was not made in equally good faith? The mere fact that in the preliminary examination of jurors their attention was drawn to the fact that insurance companies do indemnify employers is not of itself prejudicial.

In *Spoonick v. Backus-Brooks Co.*, 89 Minn. 354, 94 N. W. 1079, the supreme court of Minnesota held that inquiries of this character were not improper. There it was shown that the defendant was indemnified by an insurance company and jurors were interrogated as to their connection with, or interest in, such company in order that the court might determine whether they might act as jurors impartially and without prejudice to the substantial rights of the parties. It was there said :

"We think it would be impossible to say, or for the court to hold in the exercise of its proper discretion, that any person connected with the indemnifying company as a stockholder or otherwise could be a proper person to sit as a juror in a case, the result of which might be of pecuniary interest to such company. If

the proposed juror was a stockholder or otherwise in-
terested in such company, his disqualification would
seem to follow as a matter of law.   If this be so, it is
difficult to see upon what ground the court could re-
fuse to permit counsel to ascertain the facts while im-
paneling the jury.   It is no answer to this to say that
the insurance company is not named as a party to the
action, for the bias of the juror is not to be determined
by this fact.   Nor is it an answer to say that counsel
may protect his client by using a peremptory chal-
lenge.   It is his right to first learn the facts, and he
must do so to intelligently exercise his right to chal-
lenge peremptorily.   The authorities all go to show
that a very insignificant interest in the result of an
action, and frequently a very trifling relationship to
one of the parties, is sufficient to disqualify a person
from sitting as a juror.   In order to secure to litigants
unbiased and unprejudiced jurors, we are compelled
to hold that plaintiff's counsel had a right to ascertain
whether there was such a relationship between the
persons called as jurors and the insurance company, a
corporation vitally interested in the result, which
would disqualify these persons, because, by implica-
tion, they would be biased and prejudiced.''

In *Foley v. Cudahy Packing Co.*, 119 Iowa, 246, 93 N.
W. 284, a like question was before the supreme court
of Iowa, and it was held that an inquiry such as was
made in this instance was not an abuse of the discre-
tion of the trial court.   It was there stated that the
existence of such indemnifying companies was a mat-
ter of common knowledge; that their business was
carried on by agents, and that one or more of such
agents could be found in most of the cities and towns;
that the interests of such companies lie on the defen-
sive side of cases such as the one at bar, and if the
defendant happens to be insured in one of such com-
panies the interest becomes a direct and active one.
It was then said:

''That a defendant in an action of this character

may be insured in some such company is immaterial of itself. But it is manifest that a plaintiff may not desire to have the jury which is to try his case made up, in whole or in part, of the agents or employees of such an insurance company. The fact of such employment would not constitute a ground of challenge for cause, but, as parties and their counsel cannot be expected to know personally every juror who may be called into the box, an examination sufficiently broad should be permitted to enable a party to determine upon his peremptory challenges. . . . Such examinations must be left largely to the sound discretion of the trial court, and it is only when an abuse of such discretion is clearly shown that this court is authorized to interfere.''

These are the decisions of courts of last resort, and are much later than the decision of the intermediate court (*Eckhart & Swan Milling Co. v. Schaefer*, 101 Ill. App. 500) relied on by plaintiff in error.

Unless, therefore, the inquiry was not conducted in good faith, or was so unnecessarily extended as to constitute an abuse of discretion by the court, we cannot say there was error. If we had the knowledge of the proposed jurors and the local situation such as the trial court had, we might readily say that good reasons existed for the character and extent of the inquiry. The trial court decided that the extended inquiry was necessary and proper, and it must have determined that it was conducted in good faith by counsel. It was in much better position to determine the question of good faith than are we, and, having in view the large discretion vested in the trial court as to the extent of the inquiry, we cannot say that its rulings furnish a ground for reversal.

The original order of reversal will be set aside and the judgment of the trial court affirmed.

SMITH, CUNNINGHAM, GREENE, MASON, JJ., concurring.

BURCH, J. (dissenting) :  Presumably for the sup-
port of the court's opinion in this case a matter is
woven into it which I am unable to discover in the
record.   In stating the question it makes part of the
inquiry the possible interest or connection of the pro-
posed jurors with employers' accident insurance com-
panies.   It says that the inquiries made on the
examination of jurors were apparently to ascertain if
they had any connection with, or interest in, such
companies.   It says that any one closely connected
with, or related to, such companies or their agents
could hardly be regarded as a qualified juror; that,
to enable a party to guard against the inclusion of
prejudiced jurors it was proper for the court to allow
a full and searching inquiry as to a possible connec-
tion of the proposed jurors with an indemnifying com-
pany, or with its agents or attorneys.   The syllabus
of the case uses the same material for the erection of
its framework.

This interlarding is carefully done, although the
questions propounded to the jurors did not, in my es-
timation, contain a single word tending in the slight-
est degree to connect them with any such company.
No perversion of the meaning of words can make those
forming the interrogatories propounded apply to any
connection whatever of the juror himself with any
indemnifying insurance company, or to any personal
relation whatever of the juror with such a company,
or to any interest of the juror in such a company.
Here are some of them, with the answers returned :

"Ques.  You know of the fact that employees of
Swift & Company and Armour & Company are insured
by insurance companies?   Ans.  Well, nothing more
than what I have been told.

"Q.  You have been told?   A.  Yes, sir.

"Q. And that the insurance companies defend these suits? A. Yes, sir; I have been told so.

"Q. That they hire the lawyers and pay the judgments? A. Yes, sir.

"Q. Have you heard—do you know from hearsay— whether or not the insurance companies hire the lawyers and pay the judgments, if any are rendered? A. Nothing more than what I have heard."

Nothing can make these questions have the meaning of the following simple questions: Do you own stock in any insurance company which indemnifies employers against loss from accidents to employees? Are you holding employment under any such company? Do you have any business relation or family connection with any officer or agent of any such company? And nothing can make those questions have any other tendency than to lead the panel to believe that the defendant was fighting a sham battle for the benefit of a corporation which had contracted to pay the very damages sued for.

The fact that the defendant company took advantage of the practice of its adversary and indulged in some jury poisoning on its side shows the greater necessity for the condemnatory interposition of this court. Something more is due than an argument that one was no more hurtful than the other.

In *Spoonick v. Backus-Brooks Co.*, 89 Minn. 354, 94 N.W. 1079, it was shown to the court that an indemnity company had insured the defendant for the direct purpose of thereafter asking each juror, as he was called, if he was a stockholder or had any interest in such company.

In *Foley v. Cudahy Packing Co.*, 119 Iowa 246, 93 N. W. 284, the question was, "Have you any connection of any kind with any casualty or employers' insurance company?"

These are strong authorities upon the hypothetical case which the opinion of the court contains.   They do not decide the questions raised by the examination of jurors contained in this record.   The questions in this case were not followed by any attempt whatever to uncover any relation of the juror to any insurance company, and the questions themselves do not even squint at such a relation.   It is needless to say that the attorneys in the case are not censurable for employing a practice approved by the district court and now by this court, but I am doubtful of the legal propriety of such practice.   Because of this, and because the present opinion of the majority is largely *obiter*, I withhold my assent from it and adhere to my original view.