## NOAH C. VIOU v. BROOKS–SCANLON LUMBER COMPANY.[1]

### July 27, 1906.

### Nos. 14,794—(136).

**Injury to Foreman.**

Plaintiff, a foreman in a lumber mill, was hurt by a tram car falling from a bridge into a ravine over which the track ran. Plaintiff was engaged in removing from that ravine other cars which had previously fallen from the same track at the same place.

**Promise of Master to Remedy Defect.**

The evidence showed a sufficient expression of appreciation of personal danger to the servant to bring the case within the ordinary rule, which justifies a servant in continuing in a dangerous employment because of reliance upon the promise of the master to remedy a defect in instrumentalities or place of work in answer to a complaint made by the servant. That the servant who complained to the superintendent of the mill of the danger arising from the original design of the track and bridge was a foreman with much power over other employees, and their work, did not place him outside of the class of persons to whom the master owed the duty of exercising reasonable care in providing a safe place and instrumentalities for work.

**Contributory Negligence.**

The danger that a car might fall from the bridge upon the plaintiff at work in the ravine below was not so certain and imminent that as a matter of law he was guilty of contributory negligence in failing to provide against such contingency.

**Negligence of Physician.**

The mere fact that injuries caused by the negligence of the person sought to be charged have been increased by the negligence of an attending physician does not relieve that person of consequent liability. Nor does the fact that, before suit is brought against such person, the in-

[1]Reported in 108 N. W. 891.

99 M.—7

jured person settled a claim against his attending physician for malpractice operate to relieve the person originally guilty of negligence, of liability.

### Settlement with Physician—Award not Excessive.

In this case plaintiff settled a claim for malpractice by the physician who treated his injuries caused by defendant's negligence for $242.40. The court charged the jury as follows: "The plaintiff having settled with his attending physician for alleged improper treatment, he cannot recover of the defendant for any aggravation of damages caused by the doctor's improper treatment. The plaintiff can only recover such damages as naturally and proximately resulted from the defendant's negligence aside from any aggravation of damages caused by the negligence of the attending physician. For any condition from which the plaintiff is now suffering and which is to be referred to improper treatment by his attending physician, he has received satisfaction and he cannot recover of this defendant therefor." A verdict of $12,500 was reduced by the court to $8,500, which was accepted by the plaintiff. It is *held* that the charge of the court contained no just ground of complaint by the defendant, and that the final award of damages was not excessive nor void, because plaintiff did not bear the burden of tracing his damages to defendant as their proximate cause or because they rested on mere guesswork or conjecture.

### Indemnity Insurance—Interest of Jurors and Witnesses.

The connection of an indemnity insurance company with the defense of a personal injury action may or may not be a collateral issue. The interest or connection of jurors and of witnesses in an insurance company interested in the result of a lawsuit, is a proper matter for inquiry by plaintiff, and within reasonable limits plaintiff will be protected in the exercise of his right to make such inquiries, and, strictly within the right, admissions by the defendant may be received although indirectly involving such a company.

### Same—Inquiries of Counsel.

In this case plaintiff, to lay the foundation for such interrogation of jurors, served notice to produce a described insurance policy, and, when it was not produced, examined a supposed representative of the insurance company, in the presence of the jury, as to the connection of the insurance company with the defense. The only issue presented by the motion before the court, and in this court by assignments of error, was the good faith of counsel in making these inquiries. It is *held* that the record showed the exercise of good faith.

Action in the district court for Carlton county to recover $21,700 for personal injuries. The case was tried before Dibell, J., and a

jury, which rendered a verdict in favor of plaintiff for $12,500. From an order denying a motion for judgment notwithstanding the verdict, and granting a motion for a new trial unless plaintiff consented to reduce the verdict to $8,500, defendant appealed. Affirmed.

*Davis & Hollister* and *W. D. Dwyer,* for appellant.

*Howard T. Abbott* and *Morton Barrows,* for respondent.

JAGGARD, J.

The plaintiff and respondent was a foreman in a sawmill of the defendant and appellant. Certain slabs and certain board ends were conveyed to different yards east of the mill by means of horse cars drawn over iron rails laid for that purpose. The track over which the cars passed crossed a small ravine over which was a narrow bridge on a sharp curve. A switch was placed on this bridge so that tram cars carrying slabs might follow one curve to the yard where they were to be deposited, and so that on another curve the board ends might be carried to the other yard where they were to be deposited. The bridge was but a few inches wider than the track. Two empty slab cars in passing over the bridge had fallen from it and into the ravine. While the plaintiff was engaged in removing these cars, a car coming from the board end ran off the track at the bridge, fell from it into the ravine, struck plaintiff across the back and hip, and produced the injuries for which this action was brought. The jury brought in a verdict for $12,500. The trial court refused appellant's motion for judgment, notwithstanding the verdict, and granted its motion for a new trial, unless respondent should consent to a reduction of the verdict to the sum of $8,500. To this reduction the plaintiff duly consented. The defendant appealed from the order overruling the motions.

1. The defendant insists that the plaintiff knew the dangers of the place in which he was working, assumed its risk, and that there was no promise to repair for his benefit upon which he should have relied.

The testimony shows that some ten days prior to the accident, the plaintiff had a conversation with his official superior, the superintendent of the mill, in which he called attention to the fact that the curve was too short, and that he was having trouble there all the time. At one place he testified that in this conversation, he also said that "somebody is going to get hurt here." To this the superintendent replied, "Well

we will fix it the first chance we get." The defendant argues that there was not in this interview one single word or sentence which shows that the plaintiff had his own safety in view at any time during the conversation, and that there was nothing to show that the master and servant had in view either a transfer of the risk from the servant to the master or the removal of the dangerous condition as a protection to the servant. In support of this testimony, inter alia, he cites Lewis v. New York, 153 Mass. 73, 26 N. E. 431, 10 L. R. A. 513, in which the servant said to the superintendent that the pier where the accident happened "was in a very bad condition indeed; that strangers would be apt to fall through there." This was held not to have been a complaint on the servant's own account; he therefore assumed the risk consequent upon breaking through a rotten place in the planking on that pier. And see Wilson v. Winona & St. P. R. Co., 37 Minn. 326, 33 N. W. 908, 5 Am. St. 851; Industrial v. Johnson, 22 Tex. Civ. App. 596, 55 S. W. 362; International v. Turner (Tex. Civ. App.) 23 S. W. 146.

This contention would have been very forcible if this testimony, which was brought out of the plaintiff upon direct examination, were all the record shows on this point. Upon cross-examination, however, plaintiff testified that he started talking about the bridge and the superintendent asked him what the trouble was,

> And I says, "the cars keep running off here, can't keep them on the track." I says, "some of us here going to get hurt here."

There was testimony to the effect that plaintiff often rode across the bridge. The record showed a sufficient expression of apprehension of personal danger to the servant to differentiate this case from the cases cited and to bring it within the ordinary rule of submission to the jury.

The defendant further argues that the plaintiff was a general foreman and that his complaint was made as such, not for the protection of himself, but for the protection of the appellant company. It is true that the plaintiff had large powers, to hire and discharge men, and extensive control over men, teams, cars, tracks, and everything pertaining to the business. The plaintiff, however, because he was a foreman, was not beyond the scope of that duty which requires the master "to furnish his servant with safe instrumentalities and appli-

ances for the performance of their work (and which) applies to a foreman or superintendent as well as to a servant without rank or title.". Attix v. Minn. Sandstone Co., 85 Minn. 142, 88 N. W. 436. He had a right to complain of the peril to himself and to rely upon the promise of his official superior to repair a defect in the plan of the track adopted and put in operation by the master and beyond the immediate authority of the complaining employee to change. It appeared from the evidence that the plaintiff, of his own suggestion, had greased the rails at this point and had put in a guard rail to keep cars from getting off the track. We conclude that the plaintiff did not assume this risk as a matter of law.

2. Defendant further insists that plaintiff was guilty of negligence which contributed to his injury by reason of which he could not recover.

Before he went down the ravine with the men and horses for the purpose of placing the cars back on the track, he had "let a couple of slab cars out" and they went on safely. He says that he did not know that there was a car out on the board end, but this he might easily have ascertained. He could have left a man on top of the bridge and have directed that man not to allow any cars to cross the bridge while he was at work beneath. The argument is that he was guilty of contributory negligence by breach of his duty to see that no cars went over the bridge while he and the men under his charge were at work underneath. The plaintiff knew without question that certain cars jumped off the track. The defendant's brief quotes his testimony in connection with his complaint to his superior thus: "I told him all the cars kept running off there." The record shows that the testimony at this place was, "I told him the cars kept running off there." Other parts of the testimony show that while more than a score of round trips were made daily by cars going to the slab yard and a lesser number to the board end, only a few cars every day or two for a period of about two weeks before the accident left the track, not the bridge, at the point of defect. Our attention has not been called to any testimony, nor have we been able to find testimony, showing that, except as to the cars in the ravine and the car which struck plaintiff, any car had fallen off the bridge into the ravine below. The danger was not so imminent or certain as to require plaintiff to protect against it as a matter of law. The question of plaintiff's contributory negligence in

not putting a man at guard to prevent the passage on the track was properly for the jury.

3. The defendant also insists that the damages were excessive and unjustified.

The plaintiff's hip was dislocated and his back and legs hurt. He was given chloroform shortly after the accident, and his hip was set. The hip bone afterwards came out of the socket and was reset without the use of an anæsthetic. It subsequently again came out of the socket and was again reset without an anæsthetic. Extreme agony accompanied these operations. His injuries were permanent. At the time of trial he necessarily wore a steel brace running from his hip down to his shoe to support his leg. No question as to the propriety of the amount of the verdict would be reasonable were it not for this further contention of the defendant, namely, that the evidence showed a claim by plaintiff for damages against his attending physician for malpractice in connection with the treatment of his hip injured by the accident here in issue and a settlement of that claim by an indemnity insurance company for the physician by the payment of $242.50; that the evidence, in addition to this admission of malpractice, showed that plaintiff's condition at the time of trial and all damages flowing therefrom were not the result of the original accident, but of such malpractice; and that, upon the whole record, the trial court erroneously submitted the question of damages to the jury because plaintiff had not borne the burden of proof resting upon him to show the extent of damages for which the defendant was responsible, by reason of which the verdict of the jury could rest on nothing but vague guesswork and unreliable conjecture.

In point of fact, apart from the settlement of plaintiff's claim against the attending physician, the evidence not only does not conclusively show malpractice, but it does not much more than sufficiently present to the jury any issue on that subject. The expert called by the defendant, upon whose testimony he relies, in this aspect of the case, testified at one place that proper treatment of a simple dislocation of the hip, which he expressly assumed this to have been, would ordinarily result in a complete recovery within three months. At another place, however, the same expert testified that "some cases of simple dislocation are never fully recovered." The assumption in this testimony

that the present case was one of simple dislocation was based upon a difference of opinion between defendant's experts and the attending physician, who was in a much better position to determine the fact and whose views accorded much better with the history of the case. The record does not sustain the contention of defendant that plaintiff's injuries were due primarily to malpractice.

The mere fact that injuries caused by the negligence of the person sought to be charged have been increased by the negligence of an attending physician does not relieve that person of consequent liability. The defendant and the physician in such a case are not joint tortfeasors; there is concert neither in project, nor in action between them. Each is individually liable. Their several liabilities do not prevent recovery from either or both although they may necessitate separate proceedings to enforce the injured person's right to sue. Indeed, there are authorities which hold that the injured person may recover from the negligent defendant the full amount of his actual damages, although they may have been aggravated by the malpractice of the physician whom he employed, and whose directions he followed in the exercise of due care. In view of the charge of the court here, however, it is unnecessary to pass upon the correctness of this rule. For the court regarded the settlement with the doctor, through the insurance company, as an admission of malpractice by the plaintiff, but not as a bar to his right to recover from the defendant such damages as were attributable to injuries resulting from defendant's negligence only; that is, such damages only as were not due to the mistreatment of the physician. He charged the jury, inter alia, as follows:

> The plaintiff having settled with his attending physician for alleged improper treatment, he cannot recover of the defendant for any aggravation of damages caused by the doctor's improper treatment. The plaintiff can only recover such damages as naturally and proximately resulted from the defendant's negligence aside from any aggravation of damages caused by the negligence of the attending physician. For any condition from which the plaintiff is now suffering and which is to be referred to improper treatment by his attending physician, he has received satisfaction and he cannot now recover of this defendant therefor.

The defendant has no just cause for complaint as to this charge. It is, upon the whole, favorable to it. Doubts have been resolved against the plaintiff; but he raises no objection. It is undoubtedly true that the plaintiff must affirmatively prove both the fact and the extent of his damages, but it has also been held that the defense of malpractice in such a case is an affirmative one and the burden of proof rests upon the defendant to show the amount of aggravation due to malpractice in reduction of damages. Plummer v. City, 79 Mo. App. 439; Citizens v. Hobbs, 15 Ind. App. 610, 43 N. E. 479; City v. England, 119 Ind. 368, 21 N. E. 977, 5 L. R. A. 253. In this case, however, it is not necessary to determine the soundness of this position; for defendant, without objection, fully assumed this burden of proof upon trial and in his motion for new trial in the court below and his assignments of error in this court, and is in no position to assert that the burden rested upon the plaintiff.

Nor is the verdict void because it rests on mere conjecture. The difficulty of eliminating from the aggregate damages that part which is due to the malpractice of the physician is admittedly great; but it is not greater than occurs, for example, in actions against joint tort-feasors. Nor is it greater than is involved in more nearly analogous cases of aggravated damages; as where plaintiff was guilty of negligence in failing to exercise due care in securing medical or surgical aid (Louisville v. Falvey, 104 Ind. 409, 3 N. E. 389, 4 N. E. 908), or as where he has negligently failed to comply with the directions of his attending physician (Keyes v. City, 107 Iowa, 509, 78 N. W. 227), or as where his own negligence generally has increased his damages (Chicago v. Meech, 163 Ill. 305, 45 N. E. 290; Fullerton v. Fordyce, 144 Mo. 519, 44 S. W. 1053; Plummer v. City, supra; Throckmorton v. Missouri, 14 Tex. Civ. App. 222, 39 S. W. 174), and see Strudgeon v. Village, 107 Mich. 496, 65 N. W. 616. In all these cases cited there has been allowed recovery of damages of which the defendant was the proximate cause, excluding the aggravation of damages due to negligence of the plaintiff. It is inevitable that the determination of damages in all cases of personal injuries is indefinite and unsatisfactory. In no such case is a mathematical calculation possible. The matter must rest largely in the exercise of good judgment by the jury and of the sound discretion of the courts. The result is as close an approximation to justice as is

permitted by our system of jurisprudence. The charge was within the spirit of the authorities cited and of the authorities on the general subject. Especially in view of the action of the trial court in reducing the verdict from $12,500 to $8,500, we conclude there was no error in the final award.

4. It is also assigned as error that the plaintiff interrogated a witness in the presence of the jurors in an attempt to show that the defendant had indemnity insurance covering the plaintiff's case. Before considering the merits of the immediate controversy a brief résumé of relevant authorities will be useful. These authorities reveal a definite recession from the original position that the connection of an indemnity insurance company is entirely collateral to the issues in an action to recover for personal injuries, and that such cases should be managed from the bench with a most scrupulous and constant regard to the suppression of the reprehensible practice of introducing such a distracting consideration, and that it would be prejudicial and reversible error to cause that interest of the insurance company to appear in course of the trial. Stratton v. Nichols, 39 Wash. 323, 81 Pac. 831, collecting earlier Washington cases at page 833; Swift v. Platte, 68 Kan. 1, 72 Pac. 271, overruled in 68 Kan. 10, 74 Pac. 635.

There is some hysteria in the denunciation and some justice in the condemnation of the prejudice which may result to a defendant in consequence of the revelation of the defense of a casualty case by an insurance company. That prejudice is, however, sometimes the result of an equally reprehensible ardor on the part of counsel for the insurance company in their "quest for error." The same reason which requires a public trial renders reasonless much of the complaint based upon undue concealment of naturally relevant facts as to the interest of the insurance company in the litigation. While in a sense that connection is collateral the courts have found it was impossible to properly try such cases on any a priori view. They have generally recognized that the insurance company, being to a certain extent at least, the real party defendant in interest, cannot invariably conceal that interest. The rule is now settled that "in order to secure to litigants unbiased and unprejudiced jurors * * * plaintiff's counsel had a right to ascertain whether there was such a relationship between the persons called as jurors and the insurance company, a corporation vitally in-

terested in the result, which would disqualify these persons because by implication they would be biased and prejudiced." Spoonick v. Backus-Brooks Co., 89 Minn. 354, 94 N. W. 1079; Antletz v. Smith, 97 Minn. 217, 106 N. W. 517; Foley v. Cudahy, 119 Iowa, 247, 93 N. W. 284; Swift v. Platte, 68 Kan. 10, 74 Pac. 635; Faber v. Reiss, 124 Wis. 554, 102 N. W. 1049.

Indeed the right of counsel to interrogate a juror would seem not to be confined to laying the basis for challenge for cause, but also to enable him to intelligently use his statutory right of peremptory challenge. Meyer v. Gundlach-Nelson, 67 Mo. App. 389, 392. So, also, in the course of the trial it may also be proper to inquire as to the connection of a witness with the insurance company. In Grant v. National, 100 App. Div. 234, 91 N. Y. Supp. 805, after a review of all the New York cases cited by appellant and of others, Williams, J., said: "Suppose an insurance company is interested in the action, and a witness is sworn by the defense, and gives important evidence, and he is a stockholder in the insurance company, may not these facts be shown on cross-examination as bearing upon the credibility of the witness and the weight to be given to his evidence, and can such evidence be excluded because of any ulterior motives of counsel to disclose the fact that the insurance company is interested in the case? Clearly not. No court has ever held any such doctrine." So also in connection with admissions of liability on the part of defendants, it may be for the jury to determine the true import of a conversation, although that conversation may involve the insurance company. Anderson v. Duckworth, 162 Mass. 252, 254, 38 N. E. 510. But see Sawyer v. Arnold, 90 Me. 369, 38 Atl. 333, where evidence that defendant held an accident policy was held inadmissible to show whether or not defendant had used ordinary care. The right to make such an examination is susceptible of abuse. For example, counsel has no right to gratuitously state to the jury facts as to the defense of the case by the casualty company by its attorney appearing on trial. And it may well be held where attorneys, presumably learned in the law, could not have made such a statement for any legitimate purpose, and the statement made was calculated to have the effect of prejudicing the jury that the court should hold this to be reversible error. Mr. Justice Adams in Eckhart v. Schaefer, 101 Ill. App. 500, collecting cases at

pages 505, 506; Fuller v. Darragh, 101 Ill. App. 664. Whether an extended inquiry was necessary and proper and was made in good faith by counsel is ordinarily, however, a question largely in the discretion of the trial court. Swift v. Platte, 68 Kan. 105, 74 Pac. 635.

The right of counsel for the plaintiff to make preliminary inquiry of the insurance company's representatives, or otherwise to ascertain whether it was interested in the case as a foundation for interrogating jurors as to their connection in any way with such companies, has not been fully considered nor finally determined. In Chybowski v. Bucyrus, 127 Wis. 332, 106 N. W. 833, Mr. Justice Marshall held that "the pretense that it was necessary to interrogate counsel [for defendant], as was done, to obtain a basis for such discovery should not have appealed successfully to the [trial] court." That decision seems to have assumed that, without such foundation, but "strictly within the right" the plaintiff had a right to address questions to the particular juror under examination to discover whether any bias on his part existed because of his connection with any casualty insurance company. It would seem that this assumption is likely to aggravate the very evil which the decision sought to avoid. Counsel for plaintiff are certainly not justified in a groundless and universal inquiry of the jurors on this point.

Where, as happened in the case at bar, counsel for the defendant objects to the question whether a juror was in any way connected with an indemnity insurance company on the ground that no foundation has been laid, the trial court is confronted by difficulties. If it denies him the right to lay such a foundation, it exposes the defendant to the risk of prejudice from groundless or insufficiently grounded inquiries. If it seeks to remedy this evil by punishing such inquiries, made without sufficient reason after the trial has been completed, it may make defendant's case depend, not upon the sufficiency of the basis of inquiry, but upon plaintiff's bad faith, or may subject the plaintiff to peril of reversal for a bona fide but mistaken impression of the adequacy of his basis for the inquiries. The result is likely to work injustice to both parties. In many cases it would seem to be better practice to hear and determine the issue as to the sufficiency of the foundation when presented at the beginning of the trial. Where, as in this case, counsel for defendant have been served with notice to

produce the policy of indemnity, they are fully advised in the premises and can quietly bring the matter before the court in the presence of counsel for plaintiff so as not to call it to the attention of the jurors sitting in the box or in the courtroom. Counsel for defendant may protect themselves by practice analogous to that followed where prejudicial matter offered in evidence at trial is duly objected to, and is kept from the knowledge of the jury, by requirement that the offer be in writing, or stated orally to the court at the bench so that the jury may not hear. If, after the jurors have taken their places, the objection is publicly raised by the defendant, and the jury is then excluded, the testimony would not be without effect because it is addressed to the court only; but the fact of the exclusion of the jury would serve to emphasize in their minds, and in the minds of jurors sitting in the courtroom, the very consideration which it is sought to keep from them.

The record in the case at bar discloses that the case was called for trial; that twelve jurors took their seats. Defendant's counsel having examined the jury passed for cause. Counsel for plaintiff asked counsel for defendant whether it would be admitted that there was liability insurance in this case. Counsel for defendant replied that it would not be admitted. Thereupon one Campbell was called as a witness, and testified in the presence and hearing of the jury in answer to questions by plaintiff's attorney. These questions were fully objected and excepted to by defendant. The questions were designed to show that the witness was an agent of the accident insurance company. The testimony was to the effect that the witness was an agent of a local company which had business transactions with different accident insurance companies. He had been directed by that local company "to come up here, interview the witnesses, and see that they attended court." Thereupon counsel for plaintiff asked a juror whether he was in any way interested as a stockholder in that accident company—"the company insuring the defendant in this case." The court sustained the objection that this assumed facts not proven. Counsel for plaintiff then referred to a notice which he had just filed asking the defendant to produce the policy in question, and stating that the defendant had not done so. This notice seems to have been served, not on counsel for defendant, who actually tried the case, but upon other counsel not ap-

pearing upon trial. The court held that when a notice to produce is given there is no presumption "that the fact exists." Counsel for plaintiff asked "are there any officers or members of the defendant company here this morning." Counsel for defendant replied, "I think not, and I do not believe they will be here until this afternoon or tomorrow morning." Counsel for plaintiff then asked, "Will you communicate with the officers, and ask them to bring over when they come such a document, if there is such a document." Counsel for defendant said, "I want to state to the court that I never had any communication with the defendant yet." Plaintiff then examined the jurors for cause, and both counsel exercised their peremptory challenges.

In its motion for a new trial, instead of relying upon his exception taken at the time the questions were asked and answered under the older practice in this state, defendant moved for relief, among other things, on the ground that the court erred in overruling defendant's objections to the answer to each and every question asked of Campbell,

> For the reason that the said testimony was not sought in good faith nor for the purpose of the action, but simply and alone for the purpose of calling to the attention of the jury that it was probable that the defendant was protected against any judgment which might be secured against it in the form of insurance by a foreign corporation.

This was the only question upon which the trial court passed. It would be obviously unjust and unfair for the person who moves for a new trial to specify certain aspects of certain errors in his motion before the trial court, and then to assign additional aspects of error on an appeal to this court. If this court should find these additional aspects to be error, among other things, the costs of appeal would be imposed upon the respondent because of a reversal by an appellate court upon questions not submitted to the trial court.

Under the circumstances presented by this record, accordingly, the only question now before us is whether or not the questions put to the witness Campbell were asked in good faith. The record which has been referred to demonstrates that the usual measure of good faith was present. The matter was, however, largely in the discretion of

the trial court. He properly exercised his discretion against the defendant's contention.

Order affirmed.

LEWIS, J. (dissenting).

Plaintiff's statement to the superintendent, in charge of the difficulties encountered in handling the cars on the bridge, was not in the nature of a complaint by an employee and a promise to repair by the master. It amounted to no more than a conference for the good of the service. The evidence is not sufficient to show that plaintiff remained in employment in consideration of any promise to remedy the defect, and he assumed the risk of continuing at work. Plaintiff knew better than any one else what it was which caused the cars to leave the track and how to prevent it. He had complete charge of the entire situation, could regulate the cars at the proper speed to avoid their leaving the track, could direct the improvements of the men in every particular, yet, regardless of his own safety, he placed himself in a dangerous position without taking any means to prevent other cars from leaving the track. To my mind his conduct constituted such an exhibition of carelessness and indifference as to preclude recovery. If the master is to be held responsible for such acts on the part of his foreman, there is nothing left of the doctrine of contributory negligence.